So let's see we're starting off with Courtney Murphy is that correct? Yes your honor. And then you have it for 12 minutes and then Cesar Serrano for three minutes is that right? Very well what are you going to do in terms of you're doing the rebuttal right? Okay very well all right you all set over there council for the government? Okay very well all right Ms. Murphy please proceed. Thank you your honor. Good morning may it please the court I am Courtney Murphy certified law student representing petitioner Julius Joaquin Ohumole and I see that the clock has been set to reflect my 12 minutes thank you. Your honors this case turns on the BIA's abuse of discretion in denying Mr. Ohumole's motion to reconsider his cat claim. This court has made clear that a denial of reconsideration constitutes abuse of discretion when the BIA fails to correct material legal errors and here the BIA failed to address three such errors in the immigration judge's denial of Mr. Ohumole's cat claim. First the IJ failed to conduct the appropriate aggregate analysis required by Velasquez-Samoya by improperly merging Mr. Ohumole's two distinct theories of torture from multiple sources into one single hypothetical chain of events. Second the IJ misapplied the court's precedent for what is required for a showing of particularized threat of torture and in doing so overlooked highly probative evidence pointing to Mr. Ohumole's particular risk as a member of two particular social groups that face widespread and targeted violence in Nigeria. And third the IJ misapplied the court's precedent and the cat regulations for showing government acquiescence thus overlooking and mischaracterizing critical evidence of the Nigerian government's involvement in and acquiescence willful blindness to torture. Counsel can we um at least for my purposes I would appreciate your focusing on the last one let's just say arguendo that we agree with you about the first two okay. Okay. But if the if the IJ erred there and you don't show on a cat claim that the government either conducted conducts or acquiesced in torture you lose right? True. Okay please convince us why the petitioner in this case satisfied that burden. Absolutely so uh the legal error that was by the IJ was that first the agency overlooked and mischaracterized evidence of state acquiescence. Nigerian authorities not only tolerate but also facilitate violence against LGBTQIA persons and Christians. Forgive me you're talking about from country conditions that's what you're talking about? Yes. As opposed to anything that happened to him. As opposed to anything that happened to although if you're referring to any past harm that he may have experienced yes um we we actually disagree with how that is stated in the record. Mr. Ohomole on no less than four occasions during his hearing with the immigration judge said yes when asked if he had suffered harm in Nigeria and there seemed to have been some. I understand that what we're what I'm looking for here hope you can help me. I see. Is something from him wherein he testified or had other evidence that showed that the Nigerian government directly was involved in his torture or acquiesced in it having occurred by private actors. What evidence was that introduced to that effect? In the past or in the future? The past. In the past. So the evidence that he was trying to relay about the harm he experienced as a nine-year-old boy in a federal government college when witnessing a fellow student who was seen exhibiting gay behavior was beaten mercilessly and again as a other student was beaten the other student was not him not him but again under the the definition of torture for for cat uh it's any severe uh pain or suffering whether physical or mental. To the petitioner but in this case as I understand correctly what you're talking about the record shows that he observed that another person who exhibited gay behavior was tortured. Right. But that he personally was not. Are you suggesting that having seen that satisfies the requirement that the government of Nicaragua I mean Nigeria excuse me um acquiesced in his torture? I would argue that yes the the witnessing especially of a nine-year-old child to this sort of behavior you know directed at someone who shares characteristics which are fundamental to to his own identity could could constitute that. I know that in the asylum context age is taken into account uh when it comes to persecution so. Do you have any case law that would substantiate your position? Um not with respect to cat claims that I'm aware of your honor but I'd be happy to find supplemental briefing we just wanted the court to be aware that he was trying to explain in his testimony. Let's assume for a moment that he had so testified but if I understand your position correctly you don't have any case law that would substantiate the fact that he observed that another nine-year-old was brutally beaten for gay behavior but he himself didn't have that occur and that that constituted government acquiescence in or causing torture. I I don't but I would point out that past torture is not necessary uh to satisfy um the cat burden and we could look towards uh the probability. It's a higher burden. It's a higher burden yes but the record we feel is replete with evidence to meet that higher burden and it simply was not pointed out by the by the immigration judge in her analysis. Um again in the in the record I can direct the court to uh the IJ addresses the fact that excuse me here on page 176 of her opinion um she seems to dismiss that there's any government acquiescence because torture is prohibited by the constitution and of course in Cole the holder that is not enough to dispel the notion that torture occurs and then yet she seems to neglect that in the very next paragraph from where she would have gotten that on page 415 of the record that the committee charged with overseeing laws prohibiting torture is unable to carry out its work effectively due to lack of legal and operational independence. Two pages later that impunity exacerbated by corruption and a weak judiciary remain a significant problem in Nigeria and then further pages 14 418 through 419 prison guards reportedly extorted inmates including for sex which would constitute rape and torture uh and let me just um a lot of folks would like to use country reports for example in Mexico we get lots and lots and lots of cases in Mexico that deal with LGBTQ issues, sexism issues, discrimination against people based on their native heritage and the like. Um we don't rule in favor of the government acquiescence or actual torture unless it's focused on that person generally speaking uh the fact that uh in Nigeria there is discrimination against LGBTQ people is tragic but you have to bring it down to the petitioner in this case and what I'm struggling with is where is that done? I don't see that in the record. What am I missing? Well I I would point the court to Zosioa Jaimez and Parada de Sessions where they explain that such widespread corruption of public officials is highly probative to the question of acquiescence and I would also argue that um again I think that the the really the first legal error that we wanted to discuss today by virtue of the IJ's failing to conduct the appropriate aggregate analysis I think what happened there was that the government acquiescence claim wasn't properly adjudicated in the first instance and this is why we're requesting remand for the appropriate aggregate analysis to be conducted taking account of particularized risk and and acquiescence. What do you make though of the fact the IJ stated and I quote assessed all factors regarding the likelihood of future torture to your client and considered them in the aggregate? That's what the IJ said right? It's it is what she said your honor um however if we look to page 176 of the record this is where she commits the the absolute incorrect uh analysis under Velazquez-Samoyoya so in that case when an applicant proffers multiple theories of torture and which is our case here from from various sources as well um the the hypothetical chain of events analysis cited in in the rule of JFF is of little practical help and the IJ specifically does this incorrectly she states on page 176 respondents fear of future torture relies on a chain of suppositions respondent has not shown how the authorities would even know that he's in Nigeria that he was bisexual what his religion is so combining those two that they would seek him out and then torture him respondent must establish that each step in the hypothetical chain of events leading to his torture is more likely than not to occur that is not the law under Velazquez-Samoyoya when multiple theories are offered each theory from each source needs to be independently assessed and then once that's done they need to be aggregated to determine whether or not the applicant has met that burden of between what you quote and I quoted wasn't that done here I mean they were considered individually and then as even in the aggregate he doesn't meet the test well unfortunately because she merged those two in in on page 176 and she also does it throughout the of the opinion on the bottom of 175 and 176 she's consistently merging the two claims about his LGBTQIA status and his Christian identity considering them in the aggregate unfortunately no because those are two distinct theories and again under Velazquez-Samoyoya they need to be is it that that uh the IJ didn't use the word chains like plural or is it that the IJ needed to have two paragraphs I'm trying to because in like like a lot of these decisions it's you know they could always say more they could have but I'm actually I struggled a little bit as to this theory that the IJ multiple times says that that they considered this in the aggregate um I'm trying to figure out what the IJ could have like your theory I guess is that that he would that the IJ is saying how much would he be persecuted or tortured I guess tortured here as a bisexual or gay Christian like putting them together exactly but there's that's a little non-intuitive like when I think of like I'm trying to what is your risk of torture as a gay Christian but only as a gay Christian not as a Christian not as a gay person right especially in Nigeria where your risk of torture for each of those categories kind of comes from a different I'm not aware of the even the country conditions report saying anything about this is the risk of torture for gay Christians like like that that particular group of because it's a bit of a unicorn I'm assuming in in Nigeria so so I and I struggle to think that that what actually happened here was the IJ was really focused on bisexual Christians or gay Christians that that risk as opposed to an independent risk of torture because he's bisexual and an independent risk of torture and you understand my I understand it did IJ just said the word chain but I mean could say use the same word I mean earlier I think in your in your argument you mentioned that he is gay and that he was Christian but I didn't take take it that you were necessarily merging those two things or I well exactly thank you on her and I I see that my time is up may I finish answering his question and then we'll let you go so I I think the problem is that the IJ did merge those two together she merged them in the quote that I read that you know they won't find out or how are they going to find out that he was bisexual what his religion is but again Velasquez made it very clear that multiple theories need to be assessed independently and then aggregated added together to see if that 50 threshold has been met and that was not done and so just it's not so much you're resting on the word chain versus change or you think there should have been more discussion independent it said okay this is his risk of as a bisexual this is separate paragraph this is as risk as a Christian yes this is as risk as a person who's both bisexual and a Christian and this is his risk from public mob from police from military from Boko Haram yes you just wanted more okay yes other questions by my colleague thank you very much counsel well let's hear from the government is it his idea is that correct okay you good morning your honors it may please the court Imran Zaidi for the respondent this appeal concerns a motion to reopen and reconsider reconsider alleging a few different claims but the primary challenge here relates to cat protection and that's what I plan to focus on today subject of course to this panel's questions now the standard of review here is abuse of discretion and the board here acted well within its broad discretion in denying reconsideration for cat protection where there was no legal or factual error in the agency's prior decisions denying such protection instead in both those decisions by the immigration judge and the board the agency made this simple and correct conclusion that petitioner simply didn't meet the demanding standard that he faces a likelihood of torture in Nigeria by with the government's acquiescence now let me highlight just a few key aspects of the agency's decisions and of course along the way I'm happy to answer any of this panel's questions I think one of the sort of most important points here in Judge Smith you were getting to it just now and answering when asking my friend questions is the particularized threat it's black letter law this court and others that establish eligibility for cat protection need to show a particularized threat of torture it's very hard to do that when you don't allege any sort of claims or present any evidence that are specific to the applicant and that was the case here petitioner did not allege that he himself was ever harmed or threatened in Nigeria before he left the country more than 20 years ago in 2003 he does not allege that he himself presented any evidence suggesting that he himself has any ongoing threat that anyone's even aware of his presence in Nigeria he instead relies generally on background evidence and country reports relating to the two groups upon which he claims he'll be targeted one being Christian and the other being the LGBT community as a professed bisexual now it's very hard based on country conditions evidence alone to meet that demanding standard and to show a particularized threat of saying that you'll face the likelihood of torture and I think the the cases that petitioner themselves rely on underscore this point now you would ask in judge smith you you'd mention that we see court this this panel in this court see several cases arising from Mexico in particular well and petitioner brings up the case that they rely on in their briefing show chihuahua jaimes and there is another case amadano hernandez those both as examples of where perhaps based on background reports alone you might establish eligibility for cap protection but those in fact underscore why the board here is right and the government's position because those cases had substantial particularized evidence so it showed chihuahua jaimes the petitioner herself had been raped multiple times as a child on a on account of her lesbian identity and there was two separate theories so there was and there was particularized evidence based on both one was targeted as a member of the LGBT community she had been raped multiple times as a lesbian separately she was targeted because she had reported a lozetas gang member to the police and that gang member was then imprisoned and as a result the lozetas gang had targeted her at gunpoint with death threats so you had two separate sources of particularized threats and that's a large part of what the court relied on there in remaining for further analysis with respect to cat so you had not only particularized evidence but substantial particularized evidence there the other case was abadano hernandez somewhat similar in the sense that there was two different theories of harm there one was again based on lesbian lgbt community background there again the petitioner had been raped beaten forced to perform oral sex severely beaten and the court made a finding a specific finding of past torture there and said when you have that finding it is the principal factor in the cat analysis and then turned to country conditions evidence and said that that also supported it so these again are cases that we are not submitting to the court this is the these are the cases that petitioner is relied on to say that their evidence here is similar but they don't have any type of particularized evidence they just rely generally on country reports um i'll say that i think the the balance of petitioner challenges here relate to sort of a weight of the evidence the types of things i'm talking about how much the evidence generally suggests that they will face the likelihood of torture so i'll just address two of the sort of specific legal claims the petitioner raised here one relating to the aggregate risk um judge gilman as you pointed out i don't know what you can say beyond having the agency decision maker and in this case both not just the immigration judge but both the immigration judge and the board identified both the separate harm sources of harm as a christian and as a considered the aggregate risk and found that it does not meet the standard for cat protection so i don't think there's much to the aggregate risk well we could say i mean i think as i understand from my colloquy with her at the at the very end there i guess if we were going to say something that they could win on it would be that sort of a tick off the factors type thing if you were here at the earlier argument that you that that you have to go through in this case their risk as a christian and then you go through their risk uh lgbtq and then you explicitly have a third paragraph say that instead of kind of putting it all together here and then also and then saying you did the aggregate and i guess your view your argument is that we don't need to that that we that there's not that procedural requirement that the ij necessarily break it so a couple responses that judge van dyke i think i don't think petitioner actually wants that here and let me let me be clear about why first they didn't raise this sort of there's two parts to the aggregate risk argument as i understand what they're saying one in their opening brief they describe just generally that the agency didn't consider the aggregate risk and that's the point that i just raised with judge gilman and said the agency very explicitly did consider that then in the reply the reply brief petitioner raises this point that in that sort of chain link analysis that the immigration judge lays out that petitioner or that the agency should have separately considered the two and then maybe had a separate paragraph that you're talking about i think to actually properly aggregate you consider the separate risks you have to understand the sort of you're going to quantify them what they would add up to but then you do consider them together so to be very clear if you were to do the chain link analysis and the sort of black letter law there is matter jff and this court's decisions in andre and alaska samoa each of those links that you would be identified based on this you would be targeted you would be tortured and that the government of equity has in that torture and that if any one of those links is 50 or less then you don't meet the standard you need those to be considered together for that math to work out in your favor if you do two separate chains and in each of those chains say that so that's why i think what they're actually saying is is it's a it is a it is an odd because not the normal argument we get on that you didn't aggregate because right because they actually list them together the ij lists them together usually the argument that they didn't aggregate is they didn't mention that they aggregated the the agency didn't and the agency just had an analysis for different things but never sort of mentioned them together at the end and said they were aggregating that's our normal as i understand you know is what i've seen and then the argument is they didn't aggregate and they didn't consider it here they list them together so the argument has to be well you you aggregate it you put them together but you what you did is you you know let's say there was a b and c were the three different things you could be you could be tortured on the basis of you considered why whether your risk of being tortured as an a plus b plus c like you all those things but you didn't you didn't add your risk of a alone your risk of b alone your risk of c alone plus i suppose your risk of your a plus b plus your b plus c plus your a plus b plus c you didn't add all of that together in in order to figure out the aggregate risk and that's their argument which is it isn't a bit of an odd argument because most cases don't it it's like they it's saying they did but they're acknowledging in a sense that the judge did aggregate aggregate but didn't aggregate it only considered when they were put together it didn't take the individual risks and then add them together that seems to be their argument i'm you judge van dek i'm not sure that's how i understood their argument at least and i don't know that you would i don't know that i do know that you actually shouldn't consider the risk of both at the same example you raise of being a gay christian the math gets very complicated here um because and this is why i'm saying it really does need to be one chain to be in their interest and to do a proper aggregation because what it would be is would you face would you be identified as someone who is gay or a christian would you be then targeted as someone who's gay or a christian would you be tortured as someone who's gay or a christian and then government acquiescence based on either of those factors to do the chain link analysis i think properly and i think in the way that would help them the most is one one chain link and at each of those clauses you have targeted based on this or that and what i understand their argument their reply brief to be is that they had put targeted based on christian comma targeted based on being gay as a separate clause and that those should have been together and that's what they said about in the government's response brief we said or as if we were sort of trying to rehabilitate that analysis and to that i just said i kind of understood the other way that they were saying that they needed that that wasn't done that instead they were only considered uh the petitioner here as a gay christian that that was the one chain and they didn't combine the separate risks for me and that's why i was asking earlier it does seem odd that the that a judge would would be looking only at are they were they a gay christian as opposed what are their risks as a christian and what are their risks as a as a lgbtq person well let's take that argument judgment and again i don't think that's not as understanding it but i think that's the argument that's most clearly refuted by the record because that's the argument that if you just that's the argument that when you look through the immigration judge analysis it's very clear that the immigration judge focused on in a separate paragraph the evidence relating to christians and then later on there's nothing in the record there's nothing in the of like this myopic focus on somebody's status as a gay christian as one sort of unit without that was what i was kind of getting at earlier so it i understood i suppose that you could read this passage that they're pointing to on page nine of the idea's opinion right that way but it seems to be a bit of an odd reading to be because in context let's say uh exactly and i i mean i think it's not only odd in context i think in just general when you have uh so how do you read page nine or i'm saying on 176 which is where they say respondent has not shown how the authorities would even know that he's in nigeria comma that he was bisexual comma what is religion is comma and that they would seek him out and torture him so that um are you reading it as kind of having an or between bisexual and religion there or as an and that puts it together that is exactly how i'm reading it let me pull it up i think you might be talking about the pdf number potentially not the record number because i don't have a 176 i'm on 176 of the ar 176 but maybe it's just a different page let's see here oh what actually page number of the immigration judge's decision in its own numbering is it this is i think the passage that got to page 9 was was referring to gotcha and we referred to in the brief know these in nigeria that he's bisexual is religion so it's that line would even know that he's in nigeria that he was bisexual comma what his religion is as i'm understanding petitioner's argument it's that those were um improperly separated and no i think they're they're not in their head the other or they're shaking their head so i think they're saying well it's improperly merged and they've only looked at as a bisexual christian and not as a bisexual person or as a christian and then aggregated i mean that's what they're saying now that's the opposite of what they're saying in their opening brief so i i don't understand this nor do i understand the immigration judge or board's analysis to have only looked at the risk of somebody who is both a gay and a christian at the same time both gay and a christian at the same time and again i think that's refuted by everything else that the immigration judge and the board said in their actual analysis of the claim which was to look at country conditions evidence for the christian community separately and then for the lgbtq lgbt community separately aggregate that risk one of the struggles i just have in these cases and whenever we and this is not even necessarily limited to the immigration context but you know we have these tests that require you to look at the totality of the circumstances and so because we have these tests typically lower courts or or agencies will do their analysis most of the time kind of individual issue by issue and then they'll say and i don't think the totality of circumference is different and sometimes we criticize them as and it's definitely the opposing party almost always so that's not enough but what more can they do because i'm always trying to like if i was in their situation what more can you do to to make it clear that you are adding the risk of this plus the risk of that because it does feel like you're asking them to add apples and oranges sometimes and so how to show that work is i've struggled with how do we evaluate whether they've shown their work other i mean they usually say it like they did here but the criticism is they didn't show their work your honor respectfully i think they said it here and they showed their work again i the i think what they're really focusing on now is that sort of chain-linked language in the board in this court i mean every way to show their work would be to say there's a there's a 13 percent chance of being tortured based on being a christian and there's a you know seven percent chance or you know twenty percent chance based on being gay and there's a four percent chance of being a gay christian so we're going to add all those numbers together but i think a mathematician might tell you that you can't just add them to figure out what the aggregate risk is and that's less than 50 percent i mean but that's right and i don't feel very weird and artificial and i don't think it's ever been required and i don't want to get into that matt because it's actually not technically adding it and we've resisted that before from this panel if it's non-mutually exclusive risks which it would be here you actually add them and then you subtract the risk of being both a gay and a christian so that you're not double counting anything i don't ever expect to find that in a board decision or this court's decision but let me quickly answer your question by just saying what i don't think it's too hard to set a standard for what the board needs to do there and that's to have analyzed the risks of these two separate things being christian being lgbt and then truly totaling the risk and what this court has said because this has addressed this multiple times when you have multiple theories of harm and it is said if you've analyzed the risks the separate risks and then consider them in the aggregate in andre this court specifically said the ij considered it explicitly in the aggregate the board did not there and the court felt that's enough he in this in that case because the i just said it the board did not but it's clear that they're considering the separate risks and then totaling them all together here you have let me ask i see you're over but let me ask i have one question on a slightly different topic on the lgbtq that janjiri has laws prohibiting same-sex marriage and displays of affection and you know association with lgbtq groups is punishable up to 14 years of imprisonment right so and sometimes these prison conditions the country conditions reports say are life-threatening so why isn't that alone evidence that they would he would be returned your honor i think a law like that without question shows a country basically institutionalizing discrimination there's no question um but then to link that to the prison conditions and then to say that those two things together showed that this person will face the likelihood of torture is i think a jump way too far i think that law again clearly discriminates against a population but just criminalizing gay sex unions i don't think suggests or establishes or compels the conclusion which is the question for this court that petition would face a likelihood in nigeria just gay sex you know you uh marriages it's displays of affection and association that's right in support of marriage there's no question your honor and this i think a bit gets back to the question and the call who's having with judge smith about when you're relying purely on country conditions evidence there are awful things that countries and governments have participated in but to show that somebody faces a likelihood of torture by with the government's acquiescence based just on those country evidence is a very very difficult to be particularized it has to be particularized yes other questions about my colleague thank you very much thank you all right um mr serrano please your rebuttal may it please the court and good morning your honors my name is cesar serrano and i'm the other one thing is perfectly clear the adjudication of mr homo's cat claim contains legal error contains contains legal error okay neither the ij nor the bia independently assessed mr homo is risk of torture from multiple sources based on his sexual orientation they did not assess mr homo's risk of torture based on his religious identity and they certainly did not consider that risk collectively okay let's assume you're 100 right we still get back to the issue of government torture or acquiescence in torture so those other two errors if they are are arguably harmless if your client has not proven government involvement with torture is there any particularized evidence that was presented in this case that showed that the government of nigeria has either tortured your client in the past or would do so in the future your honor my answer has two points the first being that to clarify what we're looking for we're not asking to relitigate the issues here we're simply asking that this panel grant the petition and remand his cat claim to the va for reconsideration so that they can do the proper understanding that but you get to do that if you can show that at least arguendo if it were presented properly you would have a chance of winning but if you have not shown the third element in this case the governmental acquiescence we don't send those cases back so that's what i'm looking for what what can you give us that would give us some basis for returning that your honor and then of course the second point of that is um first there is government acquiescence in terms of the affirmative persecution by law uh the panel mentioned the 2014 law that was passed by nigeria and so this actually indicates the government's position when it comes to lgbtqia plus persons there is evidence in the record that shows that people who are identified as gay have had to endure forms of lynchings or pillory with tires set on fire and burnt alive with respect you're talking about country conditions and as we have this colloquy what you need to show is a particularized threat to your client yes your honor uh the laws are awful what's happened is awful but you have to show that your client was targeted and i'm not seeing that in the record what am i missing your honor yes uh so the first point brought up by my colleague was the consistent beating of a classmate merely perceived to be gay uh the second part of that is that he also credibly recounted a time when he was at the meat market in a muslim settlement and a christian man was stabbed um and so these are things not him but somebody else yes your honor and that for someone who is growing up in that environment who identifies as lgbtqia plus or as christian is something that is pretty probative of whether or this widespread violence against uh lgbtqia plus people your time is up let me ask my colleagues whether either has additional questions i think not we thank the certified law students we really really appreciate your being here we respect your work and respect what you're doing we hope this hasn't been too grueling an experience for you as you know as lawyers we can't tell you which results going to be but you've done an excellent job we congratulate you and thank you for coming the case just argued is submitted it's a pleasure please bring them back again the case just argued is submitted and the court stands adjourned for the day i'll rise this court for this session stands adjourned
judges: Gilman, SMITH, VANDYKE